```
IN THE UNITED STATES DISTRICT COURT
        DISTRICT OF SOUTH CAROLINA
           CHARLESTON DIVISION                    2016 APR 13  A 8:55
```

| | |
|---|---|
| Columbia Insurance Company, ) | Civil Action No. 2:14-4739-RMG |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.  ) | **ORDER** |
| ) | |
| William Edmund Reynolds, Jr., Angela D. ) | |
| Reynolds, *and* Christopher Kamil Waymer, ) | |
| *individually and d/b/a Q.E. Trucking*, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on Plaintiff's motion for a protective order (Dkt. No. 31), Plaintiff's motion for partial summary judgment (Dkt. No. 32), Defendant's second motion to compel (Dkt. No. 33), Plaintiff's first motion to compel (Dkt. No. 34), Defendants' motion to dismiss (Dkt. No. 52), Plaintiff's motion for summary judgment (Dkt. No. 54), and Plaintiff's second motion to compel (Dkt. No. 58). For the reasons set forth below, the Court grants Defendants' motion to dismiss. The dismissal terminates all other pending motions.

## I.  Background

On the night of December 16, 2013, Defendant William Reynolds was driving on Highway 17 in Colleton County, South Carolina, with his wife, Defendant Angela Reynolds (together, the "Reynolds") as a passenger. (Dkt. No. 36 at 1, Feb. 19, 2016 (Defs.' Resp. Opp'n Partial Summ. J.).) Defendant Christopher Waymer was driving a tractor-trailer loaded with logs on Woods Road. (*Id.*) Mr. Waymer pulled his truck into the intersection of Highway 17 and Woods Road, and the Reynolds' vehicle struck the right side of his trailer. (*Id.*) The Reynolds were severely injured and their vehicle was a total loss. (*Id.* at 1, ex. E.) Mr. Waymer was covered by a $1 million commercial liability insurance policy with Plaintiff Columbia Insurance

Company ("CIC"). (Dkt. No. 54 at 2, Mar. 1, 2016 (Pls. Mot. Summ. J.).) The parties agree that Mr. Waymer's negligence was a cause of the accident and that the Reynolds' damages exceed $1 million. (*See* Dkt No. 61 at 15, Mar. 10, 2016 (Pls. Resp. Opp'n Mot. Dismiss) (hereinafter "Opp'n").) Mr. Waymer, however, has reserved the defense of comparative negligence, and the amount of his liability is disputed.[1] (*Id.*)

O.W. Ray, of the James C. Greene Company, an independent adjusting company, investigated the accident on behalf of CIC. (Dkt. No. 36 at ex. C.) The Reynolds retained counsel on December 30, 2013. (*Id.*) On January 23, 2014, counsel for the Reynolds sent a demand letter to Mr. Ray, offering to settle for the full amount of the policy limit. (Opp'n 2.) The settlement offer was time-limited to expire in ten business days. (Dkt. No. 52-1 at 2, Mar. 1, 2016 (Mem. Supp. Mot. Dismiss) (hereinafter "Mem.").) James Saleeby, an attorney retained by CIC, responded, stating that CIC did not have sufficient information to pay the claim. (Opp'n 2.) The settlement offer expired on February 6, 2014. (Mem. 2.)

On April 4, 2014, Mr. and Mrs. Reynolds each filed a tort action against Mr. Waymer in the Colleton County Court of Common Pleas. *Reynolds v. Waymer*, 2014CP1500273 & 2014CP1500274 (S.C.C.P. 2014) (the "Underlying Actions"). Mr. Waymer is represented in the Mr. Saleeby in the Underlying Actions. On April 28, 2014, CIC tendered the full policy limit as a settlement offer. The Reynolds declined that offer and, on May 21, 2014, made a new settlement offer. (Opp'n 3.) The Reynolds offered to release Mr. Waymer if CIC agreed to litigate the issue of whether CIC acted negligently or in bad faith by not accepting the January

---

[1] CIC alleges that it "stands willing and able to pay the full limits of its liability coverage under the Policy in the amount of One Million Dollars ($1,000,000.00) in exchange for a release or a Covenant Not To Execute as to its insured" (Dkt. No. 1 ¶ 36) but a settlement offer is not a concession that the offeror is liable for no less than the amount of the offer. Mr. Waymer specifically denies 100% liability in the Underlying Actions. (Dkt. No. 61-8 at 3 (Mr. Waymer's response to Mrs. Reynolds' request for admission).)

23, 2014 settlement offer. (*Id.* at 3–4). If CIC agreed, the Reynolds would settle their claims for $1 million (the policy limit) if CIC prevailed on the bad faith issue, and for either $3.5 million or a jury-determined amount (CIC's choice) if the Reynolds prevailed. (*Id.*) CIC declined that offer. (*Id.* at 4.)

Per state records, mediation in the Underlying Actions occurred from October 31, 2014 to April 17, 2015. On December 16, 2014, CIC filed the present action, naming the Reynolds and Mr. Waymer as Defendants. (Dkt. No. 1.) CIC seeks a declaration (1) that the Reynolds' January 23, 2014 demand for payment of the policy limit was unreasonable, (2) that CIC's inability to respond to that demand within the imposed deadline did not amount to bad faith or negligence, and (3) that CIC's April 28, 2014 tender of the full amount of the policy limits was reasonable and was made in good faith. (*Id.* ¶¶ 40–41.) Defendants answered on February 20, 2015. In their answer, Defendants assert a counterclaim seeking a declaration (1) that CIC mishandled the Reynolds' claims against Mr. Waymer, (2) that CIC acted in bad faith, and (3) that CIC must indemnify Mr. Waymer for the full value of the Reynolds' damages. (Dkt. No. 6.) On June 11, 2015, the Underlying Actions were stayed on motion of the Reynolds.

Numerous motions are now pending in the present action. CIC has moved for partial summary judgment regarding Defendants' counterclaim (Dkt. No. 32) and for summary judgment regarding its own claim (Dkt. No. 54). Defendants have moved to dismiss for lack of subject-matter jurisdiction, arguing that the case is not ripe for adjudication because it is not yet known whether Mr. Waymer will face a verdict in excess of CIC's policy limits. (Dkt. No. 52.) Also pending are four discovery-related motions: CIC's motion for a protective order regarding certain deposition questions (Dkt. No. 31), Defendants' second motion to compel (Dkt. No. 33), CIC's first motion to compel (Dkt. No. 34), and CIC's second motion to compel (Dkt. No. 58).

## II. <u>Legal Standard</u>

### A. Rule 12(1) and Ripeness

Subject matter jurisdiction in federal courts is limited to actual cases or controversies as defined by Article III of the United States Constitution. *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016). "The 'ripeness' requirement originates in the 'case or controversy' constraint of Article III, and presents a 'threshold question [ ] of justiciability.'" *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 269 (4th Cir. 2013) (quoting *Lansdowne on the Potomac Homeowners Ass'n, Inc. v. OpenBand at Lansdowne, LLC*, 713 F.3d 187, 195 (4th Cir. 2013)). "A claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation and internal quotation marks omitted). The purpose of the ripeness doctrine is to "prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Permanent Gen. Assurance Corp. v. Moore*, 341 F.Supp.3d 579, 581 (D.S.C. 2004) (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 148 (1967)). "The issue of ripeness entails an analysis considering the fitness of the issues before the court, as well as the hardship that the parties will experience if the court withholds consideration of the dispute." *Scoggins*, 718 F.3d at 270.

In ruling on a motion to dismiss for lack of subject-matter jurisdiction, the court "regard[s] the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). "The moving party should prevail only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (citation omitted).

**B.     Declaratory Judgment Act**

Under the Declaratory Judgment Act, a district court, in a case or controversy otherwise within its jurisdiction, "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). "[A] declaratory judgment action is appropriate 'when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding.'" *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996) (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937)). But "a declaratory judgment action does require an actual controversy; the party seeking the declaratory judgment must 'show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.' *Id.* (quoting *Md. Cas. Co. v. P. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Even where a declaratory action presents an issue ripe for adjudication, a district court, in its discretion, may elect to abstain from hearing the action.[2] *Wilton*, 515 U.S. at 282–83 ("[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter

---

[2] District courts are required to abstain from hearing declaratory actions in certain circumstances not germane to the present action. *See Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 718 (1996).

jurisdictional prerequisites."). In deciding whether to abstain, "a district court should examine "the scope of the pending state court proceeding and the nature of defenses open there." *Id.* (quoting *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942)). "[W]here another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in '[g]ratuitous interference,' if it permitted the federal declaratory action to proceed." *Id.* (quoting *Brillhart*, 316 U.S. at 495) (citation omitted).

To avoid "gratuitous interference" with state court proceedings, the Fourth Circuit holds that "considerations of federalism, efficiency, and comity" must guide a district court's discretion when it is confronted with a request for declaratory judgment during the pendency of related litigation in state courts. District courts must consider "(i) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts; (ii) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; [] (iii) whether permitting the federal action to go forward would result in unnecessary 'entanglement' between the federal and state court systems, because of the presence of 'overlapping issues of fact or law,'" and (iv) "whether the declaratory judgment action is being used merely as a device for 'procedural fencing.'" *Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 377 (4th Cir. 1994).

### III. <u>Analysis</u>

The Court finds two independent and sufficient grounds for dismissal without prejudice of this action. The Court lacks subject-matter jurisdiction because this matter is not ripe for adjudication, and the Court should abstain from exercising its discretion to hear a declaratory action out of respect for the proceedings in the Colleton County Court of Common Pleas. The Court therefore grants Defendants' motion to dismiss. Because the Court dismisses this action, it

need not reach the pending motions for summary judgment or discovery-related motions. Those motions are dismissed as moot.

### A.  Ripeness

This case presents a situation that courts in this District have previously faced. The facts of *Permanent General* are, in relevant aspects, identical to this case. There, the estate of a vehicle accident victim offered to settle within the counterparty's insurance policy limits. *Permanent Gen. Assurance Ins. Corp.*, 341 F. Supp. 3d at 580. That offer was initially declined, the insurer later offered the policy limits, that offer was in turn refused, and a state tort action was subsequently filed. *Id.* The insurance company then filed a declaratory action in this District, seeking a declaration that it had not rejected the initial offer to settle within policy limits in bad faith. *Id.* The court found that Permanent General "asks the court to look into the future and stave off the threat of potential litigation" and held that the "suit is premature because a judgment has not been entered in the underlying cases that expose [the insured] to a verdict in excess of the insurance policy limits." *Id.* at 581.

In *Affirmative Insurance Company v. Williams*, an insurer also sought to preempt potential bad faith liability regarding a vehicle accident with a declaration that it had not acted in bad faith. Civ. No. 5:14-4087-JMC, 2015 WL 3968436, at *1 (D.S.C. June 30, 2015). The court found that "[a]s the Underlying Actions have not been resolved and no bad faith claim has yet been filed against Plaintiff, the court does not find Plaintiff's second cause of action [declaration regarding liability for a bad faith claim] ripe for adjudication" because the "potential of a future bad faith claim . . . is not sufficient to make this issue ripe." *Id.* at *7. Likewise, in *Travelers Casualty Company of Connecticut v. Legree*, an insurer sought a declaration barring a bad faith action against it. Civ. No. 1:12-2548-JMC, 2013 WL 3833045, at *2 (D.S.C. July 23, 2013). Because it was "not clear that a verdict or a confession of judgment would be entered in excess

of the policy limits," the court held that the insurer's request for a declaration that the insurer had acted in good faith was not ripe for adjudication. *Id.* at *5.

In this case, CIC does not seek a declaration that CIC is not liable for a verdict exceeding its policy limits with regard to the Reynolds' accident, because there is no such verdict. Nor is it apparent that there necessarily will be any such verdict, as Mr. Waymer has not conceded liability for the full amount of damages. (Opp'n 15.) Rather, CIC seeks a declaration that if there were a verdict exceeding its policy limits, then it would not be liable for that excess verdict. But "a declaratory judgment may not be given for a purely hypothetical situation." *A.S. Abell Co. v. Chell*, 412 F.2d 712, 719 (4th Cir. 1969). That is why insurers' attempts to preempt potential bad faith liability with declarations that they had acted in good faith were unripe for adjudication in *Permanent General*, *Travelers Casualty*, and *Affirmative Insurance*.

CIC seeks to distinguish *Permanent General* factually by arguing that while there the insurer alleged that liability for the accident is contested, here "CIC is not seeking any adjudication from this Court with respect to the underlying issue of the liability of its insured Waymer." (Opp'n 10.) But the insurer in *Permanent General* also sought no federal adjudication of the liability of its insured, 341 F. Supp. 2d at 580, and here CIC has not conceded the amount of Mr. Waymer's liability (Opp'n 15). The Court finds no relevant factual distinction between this case and *Permanent General*.

CIC also relies on inapposite case law. Citing *State Farm Fire and Casualty Company v. Blanton*, CIC asserts that there is an actual case or controversy here because an actual case or controversy exists "when the insurer has initiated a declaratory judgment action against both its insured and the injured third-party seeking a determination of its obligations under the policy" and "[t]his is precisely what occurred in this action." (Opp'n 7–8 (citing Civ. No. 4:13-2508,

2015 WL 9239788, at *6 (D.S.C. Dec. 17, 2015)).) That statement is quoted out of context. To assert that there is in fact an actual case or controversy, a party must refer to some fact beyond the mere fact that a lawsuit has been filed. Clearly, if there had been no accident on December 13, 2013, CIC could not bring an action seeking a declaration of its obligations in the event of a hypothetical future accident involving Mr. Waymer and the Reynolds. Likewise, if there is no excess verdict, CIC cannot bring an action seeking a declaration of its obligations in the event of a hypothetical future verdict.

The language CIC quotes from *State Farm Fire* was in turn quoted from *Pennsylvania American Insurance Company v. Valade*, 28 Fed. App'x 253, 256 (2002), which in turn cites to *Maryland Casualty*, 312 U.S. at 273–74. The question before the Supreme Court in *Maryland Casualty* was whether the insurer had any obligation to defend or indemnify its insured in an underlying state court action. *Md. Cas. Co.*, 312 U.S. at 271–72. The Supreme Court there held that "[i]t is clear that there is an actual controversy" ripe for adjudication. *Id.* at 274. Indeed, it would be anomalous to hold that an insurer cannot learn whether it is obligated to defend its insured in a lawsuit, or whether it has a financial interest in a lawsuit, until a verdict is reached in that lawsuit. In *Pennsylvania American Insurance*, the Fourth Circuit cited *Maryland Casualty* for that same proposition (applied to the question of standing). *Md. Cas. Co.*, 28 Fed. App'x at 256. And, in *State Farm Fire*, this District likewise relied upon *Maryland Casualty* to find that an insurer seeking a declaration as to "whether it had a duty to indemnify and/or a duty to defend" an insured presented an actual case or controversy. 2015 WL 9239788, at *1. Here, CIC does not seek a declaration regarding its obligations in the Underlying Actions. CIC seeks a declaration that it would not be liable for a possible future cause of action that has not yet arisen. *See* 21 Am. Jur. Trials 229 § 10 (2004) ("[T]he insured's cause of action against his insurer for

bad faith failure to settle arises when the excess judgment is rendered or the insurer's bad faith occurs, whichever is the later event.").[3]

CIC also argues that *Permanent General* and *Travelers Casualty* were wrongly decided on ripeness grounds, because the Fourth Circuit has held that "a *per se* rule forbidding a federal court to entertain a declaratory action brought to resolve issues of insurance coverage during the pendency of related litigation against the insured in the state courts . . . would, of course, be flatly inconsistent with controlling Supreme Court precedent approving the use of declaratory judgment actions by insurers in precisely that situation." *Nautilus Ins. Co.*, 15 F.3d at 376. CIC misapprehends *Nautilus*. In *Nautilus*, as in *Maryland Casualty*, *Pennsylvania American Insurance*, and *State Farm Fire*, an insurer sought a declaration to determine whether it had an obligation to defend or indemnify the insured. *Nautilus Ins. Co.*, 15 F.3d at 373. There is indeed no *per se* rule forbidding a declaratory action to resolve "issues of insurance coverage" during related state litigation. But CIC does not seek a declaration concerning any "issues of insurance coverage" in the Underlying Actions because there are no disputed "issues of insurance coverage": CIC agrees that it must defend its insured and that it must indemnify him under his insurance policy. CIC instead seeks a declaration that it in fact executed those duties in good faith, to ward off a possible future bad faith action. There is a *per se* rule forbidding a declaratory action to resolve "a purely hypothetical situation." *A.S. Abell Co.*, 412 F.2d at 719.

---

[3] Other cases in this District cited by CIC are similarly inapposite. *See Myers v. State Farm Mutual Automobile Ins. Co.*, 950 F. Supp. 148, 149–50 (D.S.C. 1997) (holding, where an insured plaintiff sued his insurer for underinsured driver benefits and the insurer moved to dismiss, arguing that the claim had not yet arisen, that, under on South Carolina law, the claim had arisen); *see also Hartsock v. Am. Automobile Ins. Co.*, 788 F. Supp. 2d 447, 452 (D.S.C. 2011) (facing the same question and, citing *Myers*, reaching the same answer).

For the foregoing reasons, the Court finds that CIC's request for a declaration is premature and unripe. Consequentially, the Court has no subject-matter jurisdiction over this action. The Court therefore dismisses this action without prejudice.

### B.     Abstention

Even if this Court had subject-matter jurisdiction over this case, the Court would decline to exercise jurisdiction under the abstention doctrine set forth in *Nautilus*.[4] All four *Nautilus* factors strongly counsel abstention in this case. The Court therefore does not reach the additional "criteria outlined in *Quarles*, which focus on the general utility of the declaratory relief sought." *Nautilus Ins. Co..*, 15 F.3d at 376. The Court assumes, without finding, that the declaratory relief sought would "serve a useful purpose" for the litigants. *See Quarles*, 92 F.2d at 325. But, nonetheless, considerations of federalism, efficiency, and comity are sufficiently compelling to justify refusal to exercise jurisdiction over this case.

First, South Carolina has a strong interest in having many of the issues raised in this action decided in state court. South Carolina maintains the roadways used by motor vehicles, South Carolina responds to and investigates motor vehicle accidents on those roadways (including the accident at issue here), and, consequently, motor vehicle liability insurance is an area of extensive state regulation. *See, e.g., Prentiss v. Allstate Ins. Co.*, 87 F. Supp. 2d 514, 524 (W.D.N.C. 1999) (finding that automobile insurance regulation is "a complex state regulatory scheme" and that "there is no federal interest in the regulation of automobile insurance, an area in which Congress has deferred to the states").

---

[4] CIC argues that Defendants have "waived" abstention by not arguing for dismissal on abstention grounds. It is not clear how arguing for dismissal on ripeness grounds, rather than for dismissal on abstention grounds, is "dilatory conduct." (*See* Opp'n 13.) Further, it is not clear how the "principles of federalism, comity, and judicial efficiency," which CIC itself claims govern abstention here (*see* Opp'n 9), could be subject to waiver by private litigants.

Second, the issues raised in this action can more efficiently be resolved in state court. CIC correctly states that the Underlying Actions will not address the issue of policy coverage. (Opp'n 13–14.) That is true not because, as CIC argues, CIC is not a party in the Underlying Actions—CIC is the indemnitor of the defendant—but because no bad faith claim has yet arisen. CIC also argues that because CIC must "file a separate action for those [bad faith] issues to be addressed . . . there is no greater efficiency to be had in state court as opposed to federal court" and "a new action in state court would be much less efficient due to . . . CIC's ability to remove any such action to federal court." (*Id.* 14.) But the inefficiency here is not due to venue selection, it is due to CIC filing this action prematurely. Clearly, it is more efficient for the state court to decide whether Mr. Waymer's liability exceeds policy limits before this Court decides whether Mr. Waymer has a claim against CIC for his liability in excess of policy limits.

Third, permitting this case to go forward would create unnecessary entanglement between the federal and state courts. As CIC asserts, this action concerns CIC's conduct, not Mr. Waymer's conduct that is the subject of the Underlying Actions. (*See* Opp'n 14.) But that is disingenuous. The CIC conduct at issue in this case is CIC's evaluation of Mr. Waymer's conduct at issue in the Underlying Actions—the very conduct for which CIC may be liable in state court. That why CIC has fought discovery in this case:

> In the present case, the Reynolds' actions against Waymer remain pending. As a result, while portions of CIC's claims file may be relevant in this declaratory judgment action, the file itself constitutes work product and/or attorney-client privileged materials in the underlying action. Were CIC to produce the claims file in this action, the Reynolds' counsel (who also represents them in the underlying actions against Waymer) would be able to use that protected material against CIC's insured (Waymer) in the underlying actions. Thus, CIC's production of the claims file would be against its insured's interests.

(Dkt. No. 20, at 4, Nov. 13, 2015 (Pl.'s Opp'n Mot. Compel); *see also* Dkt. No. 31, at 3, Feb. 2, 2016 (CIC seeking a protective order regarding deposition questions that are "related to Mr.

Ray's conclusions as to Defendant Waymer's liability in the underlying matter").) Entanglement means that issues of fact in the federal declaratory action "are already being litigated by the same parties in the related state court actions." *Nautilus*, 15 F.3d at 379. That is exactly what CIC has asserted in opposing discovery: work product relevant to this declaratory action should not be produced because production would prejudice Mr. Waymer in litigating the same underlying facts in the Underlying Actions.

Fourth, it would be "gratuitous interference" in state court proceedings for this Court to pass judgment on the behavior of the indemnitor of the defendant in those proceedings regarding the plaintiffs in those proceedings, during the pendency of those proceedings. CIC filed this action while the counsel it retained to represent its insured was engaged in state court mediation with the Reynolds. Perhaps unhappy with the course of that mediation, CIC filed this declaratory action, and a stay of the Underlying Actions resulted while the parties litigated the matter in federal court. This is a prime example of "procedural fencing."

Even if this Court had subject-matter jurisdiction over this case, the Court would decline to exercise jurisdiction. The Court therefore finds that abstention under the doctrine set forth in *Nautilus* is an independent and sufficient ground for granting Defendants' motion to dismiss.

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendants' Motion to Dismiss (Dkt. No. 52). All other pending motions are **DENIED AS MOOT**. This action is **DISMISSED WITHOUT PREJUDICE**.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

April 11, 2016
Charleston, South Carolina